The second case this morning is case number 4150578. That's McNeil v. Ketchens. For the appellant we have William Hardy and for the appellant Frederick Grosser. Before proceeding with the argument, please be advised that our third panelist, Justice Kinnick, cannot be here today. However, he has read the briefs on all the materials, he will listen to the audio recording, and he will fully participate in the ultimate decision that this court makes. Mr. Hardy. William Hardy Good morning, Your Honors. Good morning, Counsel. My name is William Hardy, and I represent the dependent appellant, Dr. Billerad Ketchens, who is here with his wife, Counsel, and I believe the McNeils are here as well. Your Honors, this case should be reversed on two separate grounds. First, there's no dispute that on the claim-splitting issue, de novo review applies. Now, with respect to the punitive damages issue, Plaintiff's Counsel has said that it's not a de novo review for due process issue. That's simply wrong. It's absolutely wrong. We cite the cases in our reply brief, and he doesn't respond to it. It is a de novo review, even the Wisconsin case he cites, which was reversed later on, or at least called into question by the Supreme Court of Wisconsin, says that. But I'd like to start with the claim-splitting argument, because if you agree on that issue, that's the end of the case. And there is absolutely no reason why the trespass count wasn't brought with the original claim. Now, we cited in our brief a number of cases where exactly that happened. Trespass, quiet title, adverse possession, declaratory relief, all of those claims were brought in the same lawsuit. And to be clear, Mr. Hardy, and I understand what you're saying, you're citing those cases to show that plaintiffs previously have combined those claims, not for the proposition that really is at issue here, whether or not the failure to bring the trespass claim with the original action should result in race due to cut. But you're indicating that those cases tend to show a trespass claim is commonly brought with these other types of claims, including a claim to quiet title. But under the test itself, just looking at the legal issue that the court has to decide, claim-splitting, you have to look at whether the core operative facts are at issue in the case. And the Supreme Court in the River Park case adopted the transaction test. Now, what the plaintiff says is, look, the transactions at issue in the original suit were only the, what he calls the sham deeds, and the issue of ownership didn't have anything to do with trespass. Well, when you look at the court's decision, the entire punitive damages award is based on all of that conduct that happened back in 1988, or 1998, 1999. He relies on the deeds. He relies on the research. And I'm going to get into that in a minute. But those are the same core operative facts. In fact, they filed a motion for summary judgment in that case, alleging that there was trespass. And I can tell you that we would not be here today. I mean, what I would have done if I had a client and there had been a trespass alleged like this, what I would have done is joined all those claims. I would have filed a motion for objective relief. I would have asked for the ejectment and trespass and all of the other claims, adverse possession. What they alleged in the case was that they were the owners by adverse possession in a verified complaint. They alleged that in a verified complaint. Ultimately, they won that case. Now they want to say, well, gee, we couldn't decide that until that issue was resolved. Yet they obtained a ruling based on their verified complaint, ultimately in McNeil 1, that they owned the property back to 1992, period. That was their claim all along. So there's absolutely no reason this couldn't have been brought. And, of course, the case law, it's a broad, broad test under the transactional test, very broad. And I just don't know how you can say that these core operative facts weren't an issue in that case, particularly when you look at the way the trial judge decided the punitive damages. So, you know, with that said, I think you reversed on that. That's the end of it. Second, let's go to the punitive damages. There is no question under the Cooper case that de novo review applies to the federal due process issue. There's no dispute about that. Maybe plaintiff's counsel will get up here now and say there's a dispute about it. But there isn't. The Supreme Court and Cooper in the State Farm case and all of these more recent cases have said, you apply that Gore test, those three factors, de novo. The appellate court decides it de novo. And you'll see in those cases the appellate courts don't remand it back to the trial court. The appellate courts decide it as a matter of law. Why? Because they're reviewing it de novo. They're not giving any deference whatsoever to the trial judge. And that's entirely appropriate. Now, the due process analysis, most of it, they don't respond to, other than to cite to a case that was decided long before Cooper and cite to a Supreme Court case from Wisconsin where they did apply a more deferential standard review, which, as we point out, the Supreme Court of Wisconsin, first of all, I don't know what the heck that has to do with Illinois law, but they describe it as some seminal case that's been cited in law review articles and whatnot. But the truth of the matter is, two years ago, the Supreme Court of Wisconsin said, hey, this was decided prior to Cooper. We have to apply a de novo review. So let's apply the de novo review here. Let's do what the plaintiffs have not done. You look at reprehensibility. You look at the disparity between the compensatory award and the punitive award. And you look at comparable cases. Now, I'm going to start with the last one because plaintiffs don't even address it. We cite cases in our brief where the only trespass cases I can find where the award is usually one-to-one. There was one case where I think it was one-to-four or one-to-five. But each case, of course, has to be looked at on its own merits. And plaintiffs will say, well, the Supreme Court says, look, that's just a guide and so forth. But the cases, if you look at the history of that, that ratio is important. And the reason it's important that these cases guide us is because notice is really at the heart of this. You have to have notice for due process that what you're doing is going to result in punitive damages. Now, what notice did he have when there isn't a single case out there that the plaintiffs can cite that there's been a hundred-to-one ratio? And that ratio itself is based on factors that weren't even an issue in the case. I'll get to that in a moment with the reprehensibility. The second factor, the ratio, the U.S. Supreme Court has said four-to-one is really the outside limit. And I understand there's a case that says, hey, there may be a rare case where if the compensatory damages are very low, maybe they will support a higher ratio. But here they alleged, actually alleged in their complaint, $54,000 in compensatory damages. They didn't lay out what the reasoning for that was in the complaint. At trial, they presented zero evidence on that, no evidence. Our trial counsel actually did introduce evidence. I'm not sure why he did. It may have been because he expected plaintiffs to introduce evidence on the $54,000 for compensatory damages. But we introduced evidence for the five-year period prior to filing the suit. And the reason for that was, as we pointed out in our brief, we filed a motion to dismiss early on in the case saying, hey, look, this is barred by the statute of limitations. And for trespass, that's five years. Plaintiff's counsel comes back and says, well, that's what we're requesting. That's the period of issue. The $54,000 was calculated based on that five-year period. Okay, well, let's just assume that's all true. Well, first of all, they didn't prove any of that. They should have. I mean, they alleged it in a verified complaint. Why didn't they provide proof of it? Instead, what they do is they convince the trial judge to award punitive damages based on all these things that happened in 1998, 1999, even before the research that he did in connection with the case. Now, that brings me to the reprehensibility. When you look at the judge's analysis of that, and I understand Judge Ford wanted to impose punishment here, but he did it the wrong way. The period of issue is the five-year period, at best, before the lawsuit was filed. And he did it in such a way that virtually everything he's talking about are things that happened in these other lawsuits. I've never heard of a case where a person is being punished for pursuing a lawsuit. As we point out, for example, the judge says, look, he appealed in that second case purely for academic reasons. That's part of the reprehensibility. Well, if there's some problem with the appeal in that case, that's what sanctions are for. But it has nothing to do with the conduct at issue in this case. And I would just suggest to you that you look very carefully at that reprehensibility analysis. And on the last page, he lists all these things. And everything he's talking about are, well, her Ph.D. is supposedly worthless, which, by the way, she obtained. She started, I believe, in 1997, got it in 2002 or 2003, you know, after the car was parked there. There's no allegations in the complaint about that and no evidence to support compensatory award on that. Talks about how they suffered from this 17-year nightmare. The court judge even says, look, even today they have to live with not pensions as their neighbor living two doors down. So what the judge is saying is, I'm going to punish you because after this lawsuit was concluded and you lost, you continue to live there. There's absolutely no evidence that anything happened during that five-year period. The car was moved immediately after the Supreme Court denied the petition for leave to appeal in McNeil 1 within a matter of days. So all of these factors, everything that the court looks at, the deeds, the survey, the attempt to gain ownership by adverse possession. I mean, think about the inconsistency in this logic, Your Honors. They say, Dr. Ketchins must have known. They convince the judge, say, Dr. Ketchins must have known. He did his own research on adverse possession. He must have known that there was no way in the world he was going to win this case. Even though he won it, and then it was reversed by the Supreme Court, or by this court, and then he moved the car immediately. They then used that against him to basically say, hey, back when he put the car on there, he knew that they owned it. He knew that he had no basis whatsoever for bringing this claim. Well, that's just a retroactive analysis of these decisions. And it's also a time period that has no relevance whatsoever to this lawsuit. The things that they look at, he looks at, he talks about, well, and by the way, Judge Turner, I noticed that you were on the second appeal. And you concurred, and you said, look, I agree that Dr. Ketchins didn't have a title to this, and Neil One decided this, and so forth, but I don't concur because there's still some question in my mind, or at least I'm finding that you shouldn't find the heirs who may have some right to this. So you concurred on that. So even you said, well, hey, this whole thing might not be settled. What the judge is doing here, and again, well, on the reprehensibility, when I read that decision, I can't find any facts within the five-year period that's at issue in the case, not a single one. Plaintiffs talk about videotaping, taking pictures. Take a look at those pictures. I know the judge relied on that. The pictures are of that front driveway, car sitting there. It shows the bushes. It shows basically what it looked like when Dr. Ketchins moved in. That driveway was gone. The garage in the back was gone. He took pictures of the back of the garage. That makes sense. He's trying to prove adverse possession. He's saying, look, they abandoned that driveway. I know he's wrong. This court said that that wasn't adverse possession for various reasons. But he took those pictures. Do you see any people in those pictures? The videotaping they're talking about. There's no dispute what happened here. And again, this is going back to totally irrelevant periods. Back in, Mrs. McNeil testified to a couple of incidents that occurred in the summer of 1998. So this was six months after the car was placed there, and sometime in 1999. And if I'm not mistaken, the summer of 1998 one was when she testified she was gardening. Dr. Ketchins went to move the car. He didn't know that she was there. She jumped up. She puts her chair down. And there's this dispute. And then there's another incident in 1999. There's a dispute about when that occurred. She says it was in 1999 when she slams a, what we call a pitchfork, you can call it a spading fork, whatever, down on the hood of the car. He says, well, that's not what happened. She threw it at my wife. Well, the fact that he's videotaping that so that he has some kind of evidence, you know, when he's moving the car to support something, you know, if something happens to the car, what's wrong with that? How is that illegal to videotape under those circumstances? And again, we're talking about 1998, 1999, periods that have no relevance whatsoever. All you have to do is look at Judge Ford's analysis of McNeil 1 and McNeil 2. Judge Ford quotes the cases at length and basically holds everything that happened in that case against Dr. Ketchens as if he knew all this stuff back in 1998 and 1999 during periods that were totally irrelevant. And I would just point out again, all these factors that the judge relied upon, loss of employment opportunities, attorney's fees, Ph.D. allegedly became worthless, all this time spent working on the 1998 case, doing research, they had to put a second story on their home. There's no allegations of complaint about that. There's no attempt to seek compensatory damages for that. Plaintiff's counsel now wants this court, apparently, to say, okay, well, revise the compensatory damages award and raise it, that there's no cross-appeal. The reason he's not arguing that more strenuously, I think, is because the statute of limitations for a personal injury action is two years. He never brought an intentional infliction of emotional distress claim, never brought an invasion of privacy case. You know, these Supreme Court cases that he talks about, he talks about the one case where, oh, there was a million dollars in emotional distress damages. True, there was an intentional inflection of emotional distress claim. Now, this is all about fairness and notice to Dr. Ketchum. And there is just simply no basis under a de novo review for this court to affirm this judgment. I think the whole thing should be reversed. And actually, if you want to look only at the common law, leaving aside for a moment the de novo review that you have to apply, under the common law, the trend in Illinois has been for reviewing courts to apply a much stricter analysis. We cite the, I think it's the Lawler case, for example, where the Supreme Court, the original award by the jury was $65,000 in compensatory, 1.75 million in punitive. Went up to the appellate court, appellate court said, no, I'm going to reduce it to a 10 to 1 ratio, $650,000. Goes to the Illinois Supreme Court, they reduce it to a 1 to 1 ratio and they say, look, this is the most that's permissible under the common law of Illinois. And I understand the cases that say there's some discretion that's accorded to the trial judge or to the finder of fact under Illinois common law, but that has no application to a claim based on due process. And, of course, that's the reason why we filed the post-trial motion. And the last thing I would say is, look, I've been practicing law for 25 years. I've never seen a trespass case where someone has sought or been awarded what, in fact, are emotional distress or invasion of privacy damages on a punitive damages analysis. That's not the purpose of punitive damages. The purpose of punitive damages is to punish, not compensate. If they wanted compensation for these things, they needed to allege that in a proper complaint. They didn't do it. Mr. Hardy, before you finish, going back to your initial argument on claim splitting and res judicata. Yes. I was looking at page 43 of your opponent's brief. And at the bottom he says, in defendant's motion to dismiss, he argued that until this court's opinion was final, plaintiff's claim for trespass was not right. I didn't see where you addressed that in your reply brief. Maybe you didn't feel like you needed to. Well, there were several motions to dismiss, or two motions to dismiss filed. And that's true. The original counsel, Mr. Whitney, filed a motion to dismiss based on that. I can't get into his mind and say why he did it. It may have been. It may have been. Let me see if I'm out of time. May I just answer your first brief? Sure, please. It may have been that he was thinking along the lines of what Judge Ford said later on, on the second motion to dismiss, that under the pacemaker case, if you have a declaratory judgment action or whatever, look, you can go back in the same case and you can seek damages in that same case. And it would be just like if he had brought an injunction action and so forth. Like I'm saying he should have done or brought a trespass case. And he won. And then they refused to move the car. In addition to whatever damages were awarded in the case following the bench trial, they'd be entitled to additional damages. That's the only thing I can think of. But, again, we raised it in a motion for summary judgment. They never argued waiver. There's no surprise here. They knew about it. So I would ask that the judgment be reversed in its entirety and remanded to the trial court with directions to refund any money that has already been paid. Thank you. Thank you. You'll have rebuttal. May it please the court. Counsel, my name is Fred Grosser. I represent Mr. and Mrs. McNeil. I'd like to begin with correcting a few things that I think need correction. Perhaps I misheard, but I understood Mr. Harding to say I had filed a motion for summary judgment. I had not filed any motion for summary judgment in this case. The defense filed a motion to dismiss, claiming that this case was not right, that we had to wait until there was a determination that we owned the property, and it was filed after this court ruled that we owned the property. They then replaced that with a motion claiming latches. I think they said we should have filed within six months. The statute of limitations was five years. Mention is made of the Cooper case. The Cooper case did not tell you that you review this entirely de novo. If you look at their original brief and our brief, I think we say essentially the same thing about standard of review, different standard of review applying to different aspects of the case. What the Cooper case said was that when you're talking about the issue of whether there is a constitutional violation, that being the question of law is reviewed de novo. It says there was no notice that we were seeking the kind of damages we got. Well, except for the complaint. The complaint alleged emotional distress, mental anguish, various other things. It sought actual damages. It sought punitive damage. The actual damages sought were about $55,000, with the request that it continue to be considered up to the point in time when the defendant finally moves his car. It says we presented no evidence of damages. That's all we did was present evidence of damages. By the time we got to trial, the defendant admitted everything else. And I would note that Judge Ford gave you, I think, a 21-page detailed order detailing his findings of fact, and they raised no dispute about his findings of fact. They are presumptively correct, not disputed, and they are the facts for this appeal. Counsel, may I ask you a question, just in clarification? In reading the complaint, your clients did request damages for emotional distress. It sounds like there was evidence presented that Judge Ford considered, at least as I see it in reading his decision, he noted the facts that would support an award for emotional distress, talked about the continued embarrassment to the plaintiff's frustration, anger, job opportunities lost. In any event, there was plenty in Judge Ford's decision that would seem to suggest that he was making an award of compensatory damages for emotional distress, but it seems that he put all of that in the punitive damages part of it and found no damages for emotional distress. Is that accurate? Well, no, I don't think, I don't agree that he intended to compensate in the punitive damages part. He's considering what they did. Well, to be clear, he did not award any damages for emotional distress, is that right? That is correct, and if you read the various parts where he talks about it, I believe the problem here, I don't agree with him, but I believe the problem here is that we presented no numbers, we presented no expert witness as to a value on emotional distress and mental anguish. My research shows that that wasn't required. Cases say, this is uniquely for the prior fact. I could have asked the McNeil's, how much do you think your emotional distress is worth? Well, that would be their evaluation. Well, it's very clear, case law says you don't have to have an expert to testify as to the value of emotional damages, emotional distress damages. But here, Judge Ford didn't award any damages for emotional distress. There was no cross appeal in this case in that regard, correct? I note in your brief, you seem to suggest this court may address the failure to grant damages for emotional distress, but you don't have any case law that would support that suggestion, is that right? I did not cite a case, I devoted one sentence to that. In the trial court, we had pointed out in our response to the post-trial motion, that once they filed a post-trial motion, the trial judge, it was all open again, it was a bench trial, he could have considered anything further including that. He said in response to the defendant's argument on the post-trial motion, that since there was no specific motion on that, he wasn't going to address it or consider it. And what I said to him in response to that is, since you said you're not going to address this, I won't address it any further, and I went on. I devoted one sentence here to this, and I believe that's under Rule 366, which Mr. Hardy also cites, indicating this court can do things, if it sees fit, beyond what is in the brief. If I may go on, they argue raised unicodon, there are several problems with that. One is raised unicodon was never raised in the trial court. That's why they cite Rule 366, they say, well, you can address it here. Well, they waived it, and there's no reason for you to address it here. I don't understand that. I thought that they argued it in the summary judgment, in the hearing for summary judgment. Didn't they argue raised unicodon? Was it included in the memorandum in support of the motion for summary judgment? No, they argued last year. I recall nothing. The only thing about raised unicodon was Judge Ford made a comment, in ruling on the motion, that even if they had raised this, it wouldn't do, and that's why they acknowledge that they didn't raise it in the trial court, and say that you can consider it here. Now, if you're going to consider it here, here's what to consider. First, raised unicodon requires two cases arising out of the same set of operative facts, and they say, oh, well, it's the same set of operative facts. They don't show how that is. The first case was based upon the recording of a sham deed back in 1997. That case was about quieting the title, or establishing they had a title. There was nothing in that case about the car in the driveway. The second case was based upon the car that was parked in the driveway a year or two later, and the things they did concerning keeping their car in the driveway. And they even took the position in McNeil, too, that it wasn't just parking the car one day. They maintained possession for each and every day for well over the seven years. And, counsel, let me just interrupt you for a moment. I'm looking at the defendant's memorandum in support of the motion for summary judgment, and at page three of that memorandum they specifically indicate that the trespass action is precluded by the doctrine of raised unicodon. So I believe it was addressed in the trial court. I'm sorry I didn't recall those words. Okay. But they are not the same operative facts. They're not the same transactions. One transaction is the scheme to get the sham deed recorded. The other transaction, which occurs much later, is the parking of the car and maintaining possession of the driveway and all the things they did to scare off and try to back down McNeil. Now, what they're doing here is they're mixing up raised unicodon and joinder of claims. These are claims that have some relationship, but not in a raised unicodon sense. In state court we have permissive joinder, federal court is mandatory joinder. It may be that we could have joined those claims together, though I don't know how that would have worked because once Judge Clem ruled against this, that would be the end of the trespass claim also. But even if raised unicodon did apply, there are several exceptions to raised unicodon, one of which is where you have a continuing tort. I recognize that they say, oh, it wasn't a continuing tort. We just parked the car there one day and then you had 12 and a half years of bad effects from it. But the things they were doing, contrary to the couple of examples that were picked out a few minutes ago, the judge found this conduct going on not only up to the date this court filed its judgment, but about six months beyond that. It was a continuing tort that went on for 12 and a half years. When we filed the complaint, we made it clear that we're seeking damages for this continuing tort going back five years. Now I want to go into due process for a moment. You've heard reference to cases talking about multipliers. Well, these cases, what they actually say is the U.S. Supreme Court declines to establish some right-line rule where there is a certain multiplier. One of the cases in which they're considering, there is a BMW case. Damage to a car before it's sold. The first time they repainted it, it cost $600. Jury finds actual damages of $4,000 and punitive damages of $10 million. And what the Supreme Court talks about is the application of due process here is they're punishing BMW, in this case, for damage that occurred to other people. You can't do that. Awarding punitive damages for conduct that BMW did in other states where it's lawful. That is, they said, taking property without due process. Now, Mr. Hardy says TXO is an old case. He can't consider it. Well, Marbury v. Madison is a much older case. That point makes no point. The later cases cite TXO. The State Farm case, the Gore case, they cite TXO and continue to cite TXO as the law. And TXO points out you've got to consider the facts of the case. In TXO, there was actual harm to people. Here we've got harm to people that goes on for years and years and years. And in TXO, the court says 526 times compensatory damages is okay under the facts of that case. But here's what's more significant about any due process application to this case. A couple of the cases say, of course, it's noticed and an opportunity to be heard. We don't have issues of taking your property without due process if you're punishing somebody for conduct in another state or those kinds of things. The complaint sought compensatory damages of $55,000 in round numbers, plus some for whatever time it continues to occur after this. The award of punitive damages was $240,000. That, if you want to consider the multiplier, the punitive damage award is 4.3 times the amount sought in the prayer of the complaint. The notice that we should be talking about is the notice for the defendant when the complaint is filed. What can he anticipate? Well, is it accurate that no evidence of compensatory damages was presented to the court? No. It's not? I don't agree that no evidence of compensatory damages was presented. We didn't present any numbers. We didn't present evidence of what this is worth or what that's worth. We didn't present evidence. I realize their expert presented some testimonies of how much it costs to park the car. What evidence did your clients present on compensatory damages? Well, on the car, of course, we took the position that this isn't a parking space in a parking lot, so it shouldn't be valued as $30 a month. The evidence presented showed the deprivation of their rights in the use of their property, plus evidence showing the emotional distress and the mental anguish going on through the various things they did over a course of many years. And arguably, you presented sufficient evidence that would have supported an award of compensatory damages for emotional distress. But the trial court didn't award any. In answer to Justice Turner's question, was there a request made of a specific dollar figure for emotional distress? Not by anybody that I can recall. I mean, what was the guidepost for the trial judge in making an award for emotional distress? Did you make any suggestions? I think it would be the same as the guidepost for a jury if it were, say, a personal injury case. Of course, I know about the rule out there, a rule of thumb, damage should be three times medical specials, but I don't think that's something appropriate for a jury. And I've actually done research on what the lawyer can say about an amount of damages to a jury, and their cases say lawyers shouldn't say, I think this case is worth $10,000, whatever it is. I could tell the judge what I think. They could say what they think. But the case I read said this is uniquely for the trier fact to determine the amount of damage in here. I'm just wondering what the record shows was suggested, if anything, in terms of an amount. So there was no amount suggested to the trial court? That is correct. Okay. I'm just reading a line from the trial court's judgment, page A13 of the appellee's brief. It says, plaintiffs have not proven any other compensatory amounts in damages. This is after talking about the parking rate. And it says, plaintiffs have proven that defendant's actions had an adverse effect on plaintiffs and their children. It seems like that's a contradictory statement, that the plaintiffs haven't proven any compensatory damages other than the parking damages, and yet defendant's actions had an adverse effect on plaintiffs and their children. But that was never addressed to the trial judge, is that right? That's, well, if I may explain, I tackled that when I read that a lot. And my conclusion, this is based upon going back and forth and reading other parts, what the judge is saying is that plaintiffs presented no dollar amount evidence for emotional distress. Not that they didn't present any evidence. They didn't present a dollar amount, and that's correct. We did not present a dollar amount. We did not suggest a dollar amount in our judgment. I have no other comments unless there are other questions. I don't see any. Thank you very much for your argument. Is there any rebuttal? Thank you. Let me take these in order. The motion for summary judgment, I was not saying that he filed a motion for summary judgment in the trespass case. That's the way he construed it. That's certainly not what I meant. As we argued in our brief, they filed a motion for summary determination in the 98 case, where they said they brought this action in response to the trespass of putting the car on there, and they alleged all these things about the beads being sham beads and so on and so forth. That is relevant to the race judicata analysis, because obviously they not only knew about it, I mean, they were arguing that it was a trespass right then and there. The standard of review, he says we basically say the same thing. I'm looking at my standard of review section in the brief. There's two paragraphs. First one, to satisfy federal due process de novo. We cite the State Farm case, the Cooper case. Then I go second paragraph, Illinois law, because we're talking about two different standards. Plaintiff's counsel skips over that first one, doesn't even mention it, and jumps right to the Illinois law. So the standard of review is de novo. I don't think there's any dispute about that. You heard the plaintiff. He said, right here, plaintiff's counsel, we were seeking damages for that five-year period, the five-year period prior to filing the trespass case. Well, how in the world can there be a judgment, then, based on these things that all happened in 1998, 1999, 2000, when plaintiff's counsel admits that those periods aren't even an issue, period. The cross-appeal, you know, it should have been filed, period. And if it had been filed, if we had raised this, you know, I think we did argue in our closing arguments, look, this is not a proper element of damages for a trespass case. We know what the trespass, in a typical trespass case, you're talking about the five-year statute of limitations, you're talking about, you know, it might be loss of rental value if you're talking about something like this. Well, trespass is a tort, so you're saying that the claim for emotional distress couldn't be brought in a trespass action? Well, I haven't seen a single case anywhere that allows that. If it was brought, then that's a personal injury, and that aspect of it would be covered by the two-year statute of limitations. Well, defamation cases are not personal injury cases, and yet emotional distress damages are available. I'm not sure that I'm, this is tangential at best, because it's not before the court. But on trespass actions, I'm not sure that the case law would support an argument that emotional distress damages are not available. Well, a defamation case, of course, you have a one-year statute of limitations, I believe, or maybe that's slander, but there are specific statute of limitations for that. But we did cite cases that say, clearly, that is, you know, based on privacy, emotional distress, those are governed by the two-year statute of limitations. But that was never an issue, because we argued, look, you can't get emotional distress in this, because, you know, if we want to start getting into emotional distress, we've got basically two bases that I understand in Illinois law. You've got, you know, the zone of danger cases, where if you've got somebody, a negligence case, and they see, God forbid, an accident, and their kid is mangled. Yeah, and I don't want to put that at your attention, because it's not even an issue here. Yeah, that's right. There's no cross-appeal. That's right. The res judicata, you know, obviously we raised that. I didn't hear any response to the various arguments we made about how all of these things back in 1998, 1999, 2000, weren't at issue. Plaintiff's counsel admitted they weren't at issue. He says that the exception on the continuing tort doctrine, I agree that that is one of the exceptions, but that doesn't mean that in this case, if this had been brought in that lawsuit, he seems to say, well, geez, the case would have ended upon Judge Clem's ruling. Well, no, there would have been an appeal, it would have been remanded, and there would have been a trial on it. And I also heard him say, look, when you look at the ratio, consider the amount we allege as damages in the complaint, the $54,000. They presented no evidence of that. Zero. They filed a verified complaint, but they presented zero evidence. So now all of a sudden for due process, we get to decide based on whether or not it's alleged in the complaint, even though there's absolutely no proof of it, and the notice that we're talking about, it's not notice of an unfair taking without due process of law. The notice discussed in those Supreme Court due process cases is a notice that, hey, you may be subjected to punitive damages or something like this. There's no notice in this case. This case should be reversed. Thank you, Your Honor. Thanks to both of you. The case is submitted. The court stands in recess.